WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Deborah L. Grier<br><br>Plaintiff,<br><br>v.<br><br>Michael J. Astrue, Commissioner of Social Security<br><br>Defendant. | No. CV-12-00085-TUC-BPV<br><br>**ORDER** |

Plaintiff, Deborah L. Grier, filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. §§ 405(g). The United States Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636 (c) and Fed.R.Civ.P. 73, having received the written consent of both parties.

Plaintiff suffers from cognitive and memory problems, obsessive-compulsive disorder, depression, and anxiety. She applied for Disability Insurance Benefits on December 26, 2007, alleging an onset of disability beginning January 1, 2001. (Transcript/Administrative Record ("Tr.") 142-44. The application was denied initially and on reconsideration. Tr. 106, 108, 111-114, 116-118. A hearing before an Administrative Law Judge (ALJ) was held on January 20, 2010. Tr. 32-70. The ALJ issued a decision on April 7, 2010, finding Plaintiff not disabled within the meaning of

the Social Security Act. Tr. 10-27. This decision became Defendant's final decision when the Appeals Council denied review. Tr. 1-3.

Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). (Doc. 1) For reasons that follow, the Court will reverse Defendant's decision and remand for further consideration.

## I. STANDARD OF REVIEW

The Court has the "power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Commissioner's decision to deny benefits "should be upheld unless it is based on legal error or is not supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). In determining whether the decision is supported by substantial evidence, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id*.

## II. DISCUSSION

Whether a claimant is disabled is determined using a five-step evaluation process. To establish disability, the claimant must show (1) she has not worked since the alleged disability onset date, (2) she has a severe impairment, and (3) her impairment meets or equals a listed impairment or (4) her residual functional capacity (RFC) precludes her from performing her past work. At step five, the Commissioner must show that the claimant is able to perform other work. *See* 20 C.F.R. §§ 404.1520.

Plaintiff has met her burden. She has not engaged in substantial gainful activity since the alleged onset date of January 1, 2001. Tr. 15, ¶ 2. She has multiple severe impairments: depression, anxiety, cognitive disorder and obsessive-compulsive disorder. Tr. 16, ¶ 3. While those impairments do not meet or equal a listed impairment (Tr. 19, ¶ 4), they do preclude Plaintiff from performing her past relevant work as a nurse (Tr. 25, ¶ 6). At step five, the ALJ concluded that Plaintiff is not disabled because she has the RFC to perform light work with certain limitations. Tr. 19-26, ¶¶ 5-11.

Plaintiff contends that the ALJ erred by granting no weight to the functional capacity assessments of treating psychiatrist Saroian, treating internist Jones, or consultative psychologist Riedlinger, and that the ALJ's finding that Plaintiff's subjective complaints are not credible lacks the support of substantial evidence. Doc. 19. Defendant contends that the ALJ properly considered medical source opinions and Plaintiff's subjective complaints in finding that Plaintiff's severe mental impairments did not preclude her from performing unskilled work at all exertional levels as of December 31, 2009. Doc. 20. The Court concludes that the ALJ did not commit reversible error by failing to give treating physicians Drs. Jones' and Saroian's opinions controlling weight, but that the ALJ's finding that Plaintiff's subjective complaints are not credible lacks the support of substantial evidence.

Plaintiff first sought treatment from Christine Saroian, M.D., on March 28, 1995. Tr. 419. The medical evidence of record contains treatment notes from Plaintiff's visits with Dr. Saroian ranging in date from November 13, 2000 to April 27, 2009. Tr. 225-254,

288-311, 416-426, 442-443. The ALJ noted that Dr. Saroian assessed the claimant with marked limitations in her ability to carry out simple or detailed instructions, maintain prolonged concentration, work without supervision, make simple work decisions, and to interact appropriately with supervisors and respond to work setting changes. Tr. 23. The medical evidence of record also includes treatment notes from Kathleen Jones, M.D., from February 15, 2006 to September 10, 2008 when Plaintiff was seen at the Palominas/Hereford Rural Health Clinic. Tr. 312-334, 341-383. The ALJ noted that in a report dated July 2008, Dr. Jones prepared a report in which she diagnosed Plaintiff with dementia associated with short term memory impairment and diminished concentration, and also assessed Plaintiff as unable to engage in full-time work activity and incapable of even low stress. Tr. 18, 23.

As Plaintiff's treating physicians, Drs. Saroian and Jones are "employed to cure and [have] a greater opportunity to know and observe [Plaintiff] as an individual." *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). Thus, their medical opinions regarding the severity of Plaintiff's impairments are entitled to "special weight," and if the ALJ chooses to disregard them, he must, "set forth specific, legitimate reasons for doing so, and this decision must be based on substantial evidence." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988)) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)); *see Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ can meet this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick,* 157

F.3d at 725. Plaintiff argues that the ALJ has not met his burden. The Court disagrees.

The ALJ observed that the medical findings submitted by Drs. Saroian and Jones and otherwise documented in the record do not support a finding that Plaintiffs' psychiatric condition is of disabling severity, nor do the treating physicians provide an assessment of Plaintiff's RFC which is compatible with the record as a whole. Tr. 23. After consideration in view of the overall record, the ALJ found Drs. Jones and Saroian's opinions not to be persuasive or controlling, and that the assessments that Plaintiff was "markedly" impaired in virtually all areas of mental functioning to be unsupported by the available evidence. Tr. 24.

Plaintiff submits that the ALJ advances four rationales for rejecting the opinions of Drs. Jones and Saroian, but that these rationales represent either an incomplete characterization of the evidence, or are a legally insufficient basis for rejecting the opinions. The Court does not agree.

Plaintiff asserts that the ALJ's rationale for rejecting both treating source opinions, that they are inconsistent with the medical records as a whole (Tr. 24), is patently insufficient as a purely legal matter. Plaintiff argues that the "specific and legitimate" standard is not satisfied by the bare assertion that a treating physician's opinion lacks objective support. (Doc. 19, at 11)(citing *Embrey*, 849 F.2d at 421 ("[t]o say that medical opinions are not supported by sufficient objective findings … does not achieve the level of specificity our prior cases have required"); *see also McAllister,* 888 F.3d at 602 ("broad and vague" reasons for rejecting the treating physician's opinions do not suffice).

Though Plaintiff's legal argument is valid, it is not factually supported by the ALJ's opinion. The ALJ summarized his rationale for rejecting both treating source opinions on page 12 of his opinion, with a summary statement that the opinions were inconsistent with the record as a whole. Tr. 24. The ALJ had first stated this rationale at page 11 of his opinion (Tr. 23), and thereafter noted how the treating physicians' opinions differed from their own treatment notes; from Dr. Stahl's 2005 examination on referral from Dr. Saroian, which noted that Plaintiff generally performed well, retaining appropriate behavior and the ability to engage in the performance of simple tasks; from Dr. Martinez's examination, which noted her ability to engage in simple daily activities and generally retained intact cognitive functioning and age-appropriate memory, and was capable of performing simple tasks and maintaining regular attendance with a preclusion against regular social interactions; and Plaintiff's own reports of her activities of daily living. Tr. 23-24. Accordingly, the ALJ's rationale for rejecting the opinions was not "patently insufficient."

Dr. Martinez's findings, in particular, support the ALJ's conclusion. Dr. Martinez conducted a psychometric evaluation comprised of a mental status examination, clinical interview, record review, Wechsler Memory Scale – Third Edition (WMS-III), Wechsler Adult Intelligence Scale – Third Edition (WAIS – III), and Bender Gestalt II. Tr. 256-260. The clinical findings indicated cognitive abilities falling in the average range; working memory or ability to keep information in memory while completing a task in the low average to average range; a low average rate of learning information following a

single presentation and average rate of learning over multiple presentations; average immediate and delayed memories, suggesting that she can recall a similar amount of both visual and auditory information as same aged peers. Tr. 260. These findings are "substantial evidence" in support of the ALJ's conclusion. *See Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985) (When an examining physician provides "independent clinical findings that differ from the findings of the treating physician," such findings are "substantial evidence"); *accord Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *Magallanes*, 881 F.2d at 751; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1985) (as amended). Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, *see Allen*, 749 F.2d at 579, or (2) findings based on objective medical tests that the treating physician has not herself considered, *see Andrews*, 53 F.3d at 1041.

If there is "substantial evidence" in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to "controlling weight." In that event, the ALJ is instructed by § 404.1527(c)(2) to consider the factors listed in § 404.1527(c)(2)-(6) in determining what weight to accord the opinion of the treating physician. Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is "still entitled to deference." S.S.R. 96-2p at 4, 61 Fed.Reg. at 34,491. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *Id*. As stated in *Reddick*,

"Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." 157 F.3d at 725 (quoting *Murray*, 722 F.2d at 502).

The ALJ observed that the medical findings submitted by the treating physicians and otherwise documented in the record do not support a finding that the Plaintiff's psychiatric condition is of a disabling severity, nor do the treating physicians provide an assessment of the Plaintiff's residual capacity which is compatible with the record as a whole. Plaintiff responds that the ALJ selectively cited treatment notes to report that Plaintiff's complaints, at least from 2003 through 2005, were "mostly mild and intermittent – e.g., feeling 'grumpy, irritable, and engaging in some OCD behaviors." Tr. 23. Plaintiff contends that the ALJ is ignoring evidence of record suggestive of a more serious impairment and exclusively considering the evidence which makes the impairment appear benign. Plaintiff illustrates with reference to a January 7, 2003 treatment note, which the ALJ did not discuss, which notes Plaintiff's ongoing problems with obsessively picking at her skin and compulsive hoarding. In fact, the treatment note in its entirety reads, as this Court is able to discern:

> Doing well – now tackling OCD hoarding sx [symptoms] – Kathy harps on hoarding issue – says Deb's "grumpy". Still picking skin – Memory has improved to a degree – Apnea trx [treatment] helped a lot "Everything improved" Thought process and speech improved drastically. [unintelligible] improved – but still gets irritable and anxious when [unintelligible] pushes her. Affect: full range, euthymic

Tr. 244. The ALJ's failure to remark on this treatment note, at worst, was harmless

- 8 -

error as the hoarding issues were being "tackled" and did not appear limiting in any regard, and by March 4, 2003, the date of Plaintiff's next appointment with Dr. Saroian, Plaintiff's skin was smooth, and Plaintiff was "doing better [with] cleaning out closets." Tr. 244. The Court has reviewed Dr. Saroian's treatment notes, in their entirety, and finds that Dr. Saroain's treatment notes are simply inconsistent with the *degree* of limitation she assigns to Plaintiff in her assessment, and while the ALJ did not cite every treatment note which might support Plaintiff's claim of a severe psychiatric condition, the ALJ did not exclusively consider evidence which makes the impairment appear benign nor ignore evidence suggestive of a more *serious* impairment. The burden is on the party claiming error to demonstrate not only the error, but also that it affected the party's "substantial rights." *Ludwig v. Astrue*, 681 F.3d 1047, 1053 (9th Cir. 2012)(citing *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009). Plaintiff has not met her burden of demonstrating that the ALJ failed to consider treatment notes from Dr. Saroian that indicated a serious impairment.

Further, after discussing Plaintiff's medical history and treatments in detail, the ALJ found that the treating physicians' assessments of Plaintiff's functional limitations were inconsistent with their own treatment notes. For example, the ALJ stated that when the Plaintiff returned to Dr. Saroian in June 2008, she reported feeling well, sleeping well, having a stable mood and generally enjoying life, nevertheless Dr. Saroian assessed Plaintiff as having "marked limitation in virtually all areas of mental functioning." Indeed, Dr. Saroian's medical records do not provide support for the limitations set out in the Psychiatric/Psychological Impairment Questionnaire. The incongruity between Dr.

Saroian's Questionnaire responses and her medical records provides a specific and legitimate reason for rejecting Dr. Saroian's opinion of Plaintiff's limitations.

The ALJ noted that Dr. Jones only largely treated the claimant for medical problems but, nevertheless, offered an opinion on the claimant's psychiatric condition. Tr. 23. Dr. Jones primarily treated Plaintiff's physical condition, which is not at issue in this case. Indeed, as the ALJ noted in his decision (Tr. 18), Dr. Jones' opinion regarding Plaintiff's mental functioning was simply at odds with her statement that if Plaintiff was applying for disability for psychiatric reasons she should have her psychiatrist complete a requested form (Tr. 358).

Dr. Jones did prescribe medication to treat Plaintiff's depression at the suggestion of Plaintiff's treating psychiatrist, (Tr. 321, 323, 349, 372), but Plaintiff reported that her depression was under control with medications, (Tr. 345, 407), and there is nothing in Dr. Jones treatment notes that would suggest that Plaintiff's depression was disabling or even limiting.

Next, Plaintiff argues that the ALJ erred by finding fault with Drs. Saroian and Jones for failing to "take into account the other factors which must be considered by the undersigned, such as the other medical reports and opinions, the claimant's statements regarding her activities, as well as the vocational factors involved." Tr. 24. Plaintiff argues that the fact that Plaintiff's treating physicians did not consider the "other factors" that the ALJ must consider does not diminish the weight to which their opinions are due. (Doc. 19, at 12). Plaintiff submits that "their opinions are based on their years of

evaluation and treatment of Ms. Grier in the outpatient setting and are to be evaluated on the basis of their foundation in 'medical signs and findings established by medically acceptable … techniques, which show the existence of a medical impairment that results from abnormalities which could reasonably be expected to produce the [symptoms] … alleged." (Doc. 19, at 12) (quoting 42 U.S.C. § 423(d)(5)(A)).

The Court agrees that it would be error for the ALJ to suggest that the treating physicians' opinions are less persuasive or authoritative because the physicians failed to take into account the other factors present in the entire record which must be considered by the ALJ. The Court finds, however, that, read in context, the ALJ was explaining that because in the subsequent section of the opinion he discredited Plaintiff's credibility, and because the treating physicians' opinions were largely based on Plaintiff's subjective allegations, he found the opinions to be neither persuasive nor controlling.

The Plaintiff next argues that the ALJ's assertion that the treating physicians have "taken [Plaintiff's] subjective allegations at face value and merely reiterated those allegations in their reports" (Tr. 24) is without basis because Drs. Saroian and Jones took steps to further scrutinize Plaintiff's conditions by ordering further diagnostic tests and imaging studies, seeking the collaboration of other physicians and specialists, and sharing treatment information and records amongst themselves. (Doc. 19, at 12)(citing Tr. 344, 402, 405, 436). Little objective medical information was obtained from these collaborations, as Plaintiff acknowledges in her motion. The imaging studies were mostly benign. Tr. 435. Dr. Stahl noted that Plaintiff had a sharp mind, intact to simple testing

during a mental status exam, with intact judgment and insight, though with a subjectively slow memory. (Tr. 403). Ultimately, Dr. Stahl's impression was of *subjective* cognitive difficulties. Tr. 404. Dr. John LaWall noted that Plaintiff's depression was adequately treated with medication, that Plaintiff scored 30 out of 30 on a mini-mental state exam. Though Dr. LaWall's impression of Plaintiff was "Cognitive disorder, not otherwise specified," his examination of Plaintiff and review of her medical records in August, 2009, was somewhat inconclusive. Tr. 430. Dr. LaWall commented that a psychiatric report in her medical history generated by a Ph.D. psychologist and which reported significant difficulty with concentration possibly related to mood disturbance as well as other factors did not use a standard neuropsychological battery, and therefore the results were hard to interpret. Tr. 430. Plaintiff protested that she had been "given all the answers" in another round of testing in her medical history which Dr. LaWall reviewed and which essentially said that Plaintiff was "okay." Tr. 430. Extensive blood testing regarding her cognitive complaints was essentially normal. Tr. 430. Thus, it appears that, as with Dr. Saroian, Dr. LaWall's impression was based on Plaintiff's subjective reporting. An ALJ may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been properly discounted as incredible. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citing *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)). The Court finds that substantial evidence supports the ALJ's factual determination that the treating physicians' opinions were based upon subjective complaints from Plaintiff, and also her partner, Ms. Sowdin, who

attended Plaintiff's treatment sessions and whose statements are reflected in Dr. Saroian's notes. A review of the treating physicians' records reveals that they largely reflect Plaintiff and her partner's subjective reports of cognitive difficulties, with little independent analysis or diagnosis. As discussed below, however, the Court finds that the ALJ did not properly discount the Plaintiff's credibility, and thus, the ALJ's reliance on Plaintiff's self-reporting as a basis for rejecting the treating physician's opinions was in error. Because the Court finds that the ALJ's conclusion regarding the treating physicians' opinions was otherwise supported by substantial evidence, the Court finds this error harmless.[1] *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)(An ALJ's error is harmless where it is "inconsequential to the ultimate nondisability determination.")(quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008); *Robbins v. Comm'r, Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006)).

Finally, Plaintiff asserts that the ALJ, in finding that Dr. Saroian's opinion was inconsistent with Plaintiff's own descriptions of her ability to perform activities of daily living, erred in failing to consider that Plaintiff performs these activities only under her partner's supervision. Again, as discussed below, the Court finds that the ALJ did not properly discern between activities performed by Plaintiff on her own, and activities which she was only capable of performing under the supervision of Ms. Sowdin.

---

[1] On remand, the ALJ should address this error after properly reviewing Plaintiff's credibility.

- 13 -

Finally, the ALJ rejected the opinion of consultative psychologist Blaise Riedlinger, who assessed the Plaintiff as markedly limited in all areas of mental functioning, commenting that because he was not a treating source, his opinion would in no instance be entitled to controlling weight. Tr. 22. Additionally, the ALJ noted that Dr. Riedlinger's opinion was obtained at the request of Plaintiff's representative, made basically the same findings as consultative examiner Dr. Martinez, was inconsistent with Dr. Saroian's ongoing clinical observations, and was inconsistent with Plaintiff's own statements to Dr. Saroian, in the record, and at the hearing regarding her mental health and ability to perform daily living activities.

Plaintiff argues that the ALJ may not reject Dr. Riedlinger's opinion "just because he is not a treating source," especially when his opinion accorded with the treating sources in assessing numerous "marked" functional impairments. (Doc. 19, at 14) The ALJ, however, did not reject Dr. Riedlinger's opinion on the basis that he was not a treating source, rather, the ALJ noted that under the regulations Dr. Riedlinger's opinion is not entitled to controlling weight. This is a correct observation. As this Court noted above, the regulations provide that a well-supported medical opinion by a treating physician, but not an examining physician, is to be given controlling weight." *Id.* § 404.1527(c)(2).

The ALJ does err by according any significance to the purpose for which the report was obtained. The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them. *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995).

- 14 -

Neither is there any less weight granted the findings when they are procured at the behest of the claimant than when they are obtained by the Commissioner. *Id.* (citing *Ratto v. Secretary*, 839 F.Supp. 1415, 1426 (D.Or. 1993) ("The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits."). While the Secretary "may introduce evidence of actual improprieties," no such evidence exists here.

Such error is harmless, however, as substantial evidence supports the ALJ's finding that Dr. Riedlinger's conclusions were inconsistent with Dr. Saroian's ongoing clinical observations, the findings of Dr. Martinez and the Plaintiff's own statements to Dr. Saroian, in the record and at the hearing regarding her mental health and ability to perform daily living activities.

The ALJ further found Plaintiff not wholly credible because of the lack of clinical support for the degree of impairment in the areas of memory and concentration, the findings of Dr. Martinez and the claimant's descriptions of her daily activities. Tr. 24. In evaluating the credibility of a claimant's testimony regarding subjective symptoms, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the … symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation omitted); *see also Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) ("Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as

to subjective symptoms merely because they are unsupported by objective evidence." (internal quotation marks and citation omitted)). "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."*Lingenfelter*, 504 F.3d at 1036 (internal quotation marks and citation omitted); *see also Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009); Vasquez, 572 F.3d at 591-93 (concluding that ALJ failed to provide "specific, clear, and convincing" reasons to support adverse credibility determination); *Lester,* 81 F.3d at 834; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Berry*, 622 F.3d at 1234 (internal quotation marks and citation omitted); *see also Lester*, 81 F.3d at 834; *Dodrill*, 12 F.3d at 918.

When assessing a claimant's symptoms, the ALJ should consider, in addition to objective medical evidence, her daily activities; the location, intensity, frequency and duration of the symptom; factors that trigger or exacerbate the symptom; the effectiveness of any medication to alleviate the symptom and any side effects; treatment the claimant receives for relief of the symptom; any steps other than treatment used to relieve the symptom (such as lying down or changing position); and any other factors relevant to claimant's limitations due to the symptom. 20 C.F.R. § 404.1529(c)(3); SSR

96–7p. In assessing credibility the ALJ can also consider the claimant's "reputation for truthfulness, inconsistencies either in [her] testimony or between [her] testimony and [her] conduct, [her] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [she] complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (citing *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)). The ALJ's credibility finding is entirely deficient of the requisite specificity; he did not clearly articulate what symptoms he evaluated and found not entirely credible nor which evidence he relied on to discount specific symptoms. See SSR 96–7p ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.")

Plaintiff argues that the ALJ repeatedly mischaracterizes the evidence in the record by citing activities of daily living performed by Plaintiff as evidence of Plaintiff's high functioning, even though the activities are performed under the supervision of Ms. Sowdin. The Court agrees. While some activities cited by the ALJ were performed, at some time, by Plaintiff without help from Ms. Sowdin, many of the activities required assistance, or reminders, from Ms. Sowdin in order for Plaintiff to complete the tasks successfully.

This, however, is not the only other rationale the ALJ relied on in finding Plaintiff

not wholly credible. The ALJ also referred to the findings of Dr. Martinez in concluding that Plaintiff was not wholly credible. In weighing a claimant's credibility, the ALJ may consider testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *See Smolen,* 80 F.3d at 1284 (citations omitted). *See also Turner v Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010); *Valentine*, 574 F.3d at 693 ("[T]the ALJ provided clear and convincing reasons to reject [the claimant's] subjective complaint testimony.").

An ALJ's error may be harmless where the ALJ has provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record. *See Bray*, 554 F.3d at 1227; *Carmickle,* 533 F.3d at 1162–63; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195–97 (9th Cir. 2004). In this context, an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion." *Batson*, 359 F.3d at 1197; *see also Carmickle*, 533 F.3d at 1162.

The ALJ countered Plaintiff's assertions of cognitive and memory problems, pointing to her performance during Dr. Martinez's examination, and noting her ability to engage in simple daily activities and generally retaining intact cognitive functioning and age-appropriate memory. Tr. 23. The ALJ further noted Dr. Martinez assessed Plaintiff as capable of performing simple tasks and maintaining regular attendance with a preclusion against regular social interactions. Tr. 23-24. The ALJ, however, cannot reject Plaintiff's credibility regarding her symptoms solely because they are not substantiated by the

medical evidence. *Light,* 119 F.3d at 792; SSR 96–7. The ALJ erred by failing to articulate clear and convincing reasons to discount Plaintiff's credibility, including memory and concentration problems. Further, the ALJ's findings regarding Plaintiff's activities of daily living were not supported by substantial evidence.

### III. REMEDY.

The decision to remand for further development of the record or for an award of benefits is within the discretion of the Court. 42 U.S.C. § 405(g); *see Harman v. Apfel*, 211 F.3d 1172, 1173-74 (9th Cir. 2000). When a court finds that an administrative decision is flawed, the remedy should generally be remand for "additional investigation or explanation." *INS v. Ventura*, 537 U.S. 12, 16 (2002) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)); *see also Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004). The ALJ failed to provide sufficient explanation for finding Plaintiff not wholly credible. Thus, the Commissioner needs to reconsider this issue, modify the decision as necessary, and provide specific reasons supported by the required evidence for the decision. Thus, the appropriate remedy at this point in the proceedings appears to be a remand for further findings.

For the reasons above, the Court will remand to the Commissioner for additional proceedings consistent with this order. On remand, the Commissioner shall review and address Plaintiff's symptoms individually, and support any credibility rejection with clear and convincing reasons.

IT IS ORDERED:

1. Defendant's decision denying benefits is reversed.

2. The case is remanded to Defendant for further proceedings consistent with this Order.

3. The Clerk is directed to enter judgment accordingly.

Dated this 5th day of November, 2012.

_____
Bernardo P. Velasco
United States Magistrate Judge